# UNITED STATES DISTRICT COURT

SOUTHERN            DISTRICT OF            CALIFORNIA

FILED
08 AUG -8 PM 4:05
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**One Laptop Computer, Model PCG-394L
US#CXMM01BRD02D330**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: '08 MJ 2468

I, __James Pokryfke__, being duly sworn depose and say:

I am a(n) __Special Agent with the Drug Enforcement Administration__ and have reason to believe that

___ on the person of or _XX_ on the property or premises known as (name, description and/or location)

**See Attachment A**

in the _____ SOUTHERN _____ District of _____ CALIFORNIA _____
there is now concealed a certain person or property, namely (describe the person or property)

**See Attachment B**

which is evidence of the commission of a violation of Title 21, United States Code, Sections 841(a)(1) and 846 - conspiracy to distribute controlled substances.

The facts to support a finding of Probable Cause are as follows:

**See Attached Affidavit incorporated by reference.**

Continued on the attached sheet and made a part thereof. _X_ Yes ___ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

8/8/08 _____ at ____ San Diego, Ca. ____
Date                              City and State

LOUISA S. PORTER
U.S. MAGISTRATE JUDGE                _____
Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, JAMES POKRYFKE, Special Agent of the Drug Enforcement Administration ("DEA"), having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the DEA and have been so employed since November 2004. I attended the DEA Academy from November 2004 through March 2005. At the DEA Academy, I was trained in all aspects of conducting criminal investigations with an emphasis in those related to the smuggling of contraband—including drugs—into the United States. This training included methods of investigation related to international and domestic drug trafficking and money laundering.

2. Prior to being hired as an SA, I obtained a degree in Administration of Justice and worked as a police officer for the Elmhurst Police Department (hereafter EPD) in Elmhurst, Illinois. I was hired by the EPD in September 1995, and was promoted to Detective in December 2003. During the course of my duties with the EPD, I arrested street drug users and sellers, and became familiar with their mannerisms, jargon, and patterns of activity.

3. I am currently assigned to Enforcement Group 1 (hereafter Group 1) at the San Ysidro Resident Office. Group 1 conducts investigations targeting high echelon drug traffickers with organizations based in Mexico and the United States, which operate throughout the United States.

4. I have participated in many narcotic-related search warrants and found those who participated in the sale of narcotics usually keep information related to their sales, such as pay/owe sheets and customer names and telephone numbers. This information has been stored in many different ways, including electronic devices. I have consulted with other law enforcement officers

who have searched and found information related to the sale of narcotics contained within electronic devices, such as computers.

### ITEM TO BE SEARCHED (ATTACHMENT A)

5. This affidavit is submitted in support of an application to search a laptop computer described Sony Vaio Laptop Computer, Model PCG-394L, US#CXMM01BRD02D330 (hereinafter referred to as the "laptop"), for evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846. The laptop is now in DEA custody, having been seized on July 12, 2008. I believe that probable cause exists to believe that evidence of violations of federal criminal law, specifically drug trafficking will be found in the laptop.

### ITEMS TO BE SEIZED (ATTACHMENT B)

6. Records, notes, memos, and ledgers, evidencing the transportation, ordering, sale, and distribution of controlled substances connected to Paul PADIILA, Marlo RINES or their associates. Pay/owe sheets, lists, notes, memos, and directories which reflect the names, addresses and/or telephone numbers of customers, and/or possible co-conspirators. Photographs which depict potential co-conspirators, assets, and narcotics.

7. I have been personally involved in the investigation that is the subject of this affidavit, and I am completely familiar with the facts outlined below. That knowledge comes from my personal participation in this investigation, including interviews with, and my analysis of reports submitted by, other law enforcement agents participating in this investigation.

### PROBABLE CAUSE

8. In 2008, Paul Michael PADILLA and Marlo William RINES contacted Jose Raul AYALA regarding their desire to purchase multiple kilograms of heroin. AYALA contacted

William GOMEZ-Garcia who, in turn, contacted Emmanuel BAUTISTA in the Southern District of California to obtain the heroin. BAUTISTA agreed to obtain the heroin from a source of supply for distribution to the buyers.

9. PADILLA and RINES reside in Oregon. AYALA and GOMEZ reside in the State of Washington. On or about July 11, 2008, AYALA and GOMEZ traveled by airplane from Portland, Oregon to San Diego, California to participate in the heroin purchase. GOMEZ rented a car in his own name in San Diego. Also on or about July 11, 2008, PADILLA and RINES traveled by car from Oregon to San Diego. PADILLA and RINES traveled to San Diego in a car belonging to a friend of RINES'. The friend had loaned the car to RINES because he had told her he was going to go hiking in Portland, Oregon.

10. On July 12, 2008, BAUTISTA met with his source of supply in a car in a parking lot in San Diego, California. During that meeting, BAUTISTA and the source of supply negotiated a purchase price for the buyers of $16,000 per kilogram of heroin. PADILLA, RINES, GOMEZ, AYALA and BAUTISTA subsequently met in the parking lot of a nearby McDonald's restaurant. AYALA took a bag from PADILLA's and RINES' car and placed it in AYALA's and GOMEZ' rental car. PADILLA and BAUTISTA traveled across the parking lot to meet with BAUTISTA's source of supply a second time. GOMEZ, RINES and AYALA waited outside the McDonald's restaurant. Agents arrested all five defendants when PADILLA took possession of a bag containing what he believed to be multiple kilograms of heroin.

11. During the arrest of RINES, GOMEZ, and AYALA, RINES was sitting inside a vehicle. The vehicle, a 2005 Subaru, bearing Oregon license plate 917BQZ, belongs to Sarah Templeton, of Portland, Oregon. Templeton told DEA agents that she gave RINES permission to

use the vehicle to go hiking in the Oregon area. Instead, RINES and PADILLA drove from Portland, Oregon, to San Diego, California, in the above-mentioned vehicle, unbeknownst to Templeton. PADILLA and RINES were both seen in the vehicle on July 12, 2008, by surveillance agents minutes before their arrest.

12. GS Martinez searched the 2005 Subaru incident to arrest and located a yellow tool box within the passenger area of the vehicle, which was locked with a padlock. GS Martinez asked RINES if the yellow box belonged to him and RINES replied, "I guess so." GS Martinez noticed the yellow box, despite being locked, was able to be opened enough to see and remove the contents. GS Martinez saw the laptop described above, and decided to take the yellow box and laptop as evidence, knowing drug traffickers often store information related to drug trafficking within electronic devices, including laptop computers. GS Martinez also noticed personal items including clothes and toiletries were also located within the passenger area of the vehicle, believed to belong to PADILLA and RINES.

13. On July 12, 2008, the laptop was seized as evidence by DEA SA and is being maintained in the San Ysidro Resident Office evidence storage room.

14. RINES and four other coconspirators were charged with conspiracy to distribute heroin by a federal grand jury on July 23, 2008.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that members of drug trafficking organizations use various electronic devices to store information regarding their narcotics activities. I also know that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital

information are stored in the memory of computers which may identify other persons involved in drug trafficking activities.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this affidavit, I believe that RINES and/or PADILLA were involved with others in the attempt distribution of heroin. I further believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information, as more fully described in attachment B, are stored in the memory of the laptop described herein.

## SUMMARY

17. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Marlo RINES and/or Paul PADILLA used the laptop to facilitate the offense of attempt distribution of heroin. This computer was likely used to facilitate the offense and store data, which constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

18. I also believe that probable cause exists to believe that evidence of RINES' and/or PADILLA's illegal activity continue to exist on the laptop computer that is the subject of this affidavit.

//

//

//

//

19.  Therefore, I respectfully request a warrant be issued authorizing your affiant, a DEA SA, or another DEA SA specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

*James Pokryfke* (signature)
JAMES POKRYFKE
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me this ___8___th day of August, 2008.

UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

ITEM TO BE SEARCHED

One laptop computer further described as a Sony Vaio, model PCG-394L, US#CXMM01BRD02D330, seized on July 12, 2008, by the DEA from the automobile occupied by Marlo RINES, and currently safeguarded at DEA San Ysidro Resident Office in the non-drug evidence secured room.

## ADDENDUM TO ATTACHMENT B - PROPERTY TO BE SEIZED

## REGARDING THE SEIZURE OF COMPUTER INFORMATION

In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

1. The computer (more fully described in Attachment A) will be transported to the DEA Digital Evidence San Diego Sub-Regional Forensic Laboratory ("SRFL") for review. The computer will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

3. In searching the data, the computer personnel may examine all of the data contained in the computer to view its precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

4. If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure unless further authorization is obtained from the Court.